UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

JUAN BANKS

CRIMINAL ACTION

NO. 12-59-BAJ-SCR

**RULING ON MOTION TO SUPPRESS**

This matter is before the Court on a Motion to Suppress (doc. 8) and a Supplemental Motion to Suppress (doc. 13) filed by the defendant, Juan Banks ("Defendant"). Defendant seeks to suppress all evidence seized during a search of Defendant's person and vehicle that occurred on July 5, 2011; namely, a firearm, prescription narcotics (oxycodone), and marijuana.[1] The Government opposes the motion (doc. 12). An evidentiary hearing was held on July 9, 2012. Officers Vincent Liberto ("Officer Liberto") and Nicholas Collins ("Officer Collins") testified on behalf of the Government. The Court finds the witnesses' testimony credible. The Government offered into evidence the dash camera video from Officer Liberto's police unit (Government Ex. 1).

---

[1] Officers allegedly also found codeine during the search; however, Defendant was not charged with possession of codeine in the indictment. Nonetheless, Defendant seeks to suppress all illegally seized evidence.

## Facts

Defendant alleges that on July 5, 2011, at 6:59 P.M., he was driving a purple 1999 Chevrolet Suburban when he was stopped by Officer Collins, Officer David Kennedy ("Officer Kennedy"), and Officer Liberto in violation of La. R.S. § 32.361.1.[2] Officers Liberto and Collins testified that they had received information that described a purple 1999 Chevrolet Suburban, similar to the one Defendant was driving, that was allegedly involved in a recent shooting. Officer Liberto further testified that after being informed that the Suburban was in the area, he located it and effectuated a traffic stop in his marked police unit. Officers Collins and Kennedy were following behind the Suburban in an unmarked police unit. The Defendant does not contest the legality of the traffic stop.

Defendant submits that the officers, upon exiting the unmarked unit, immediately told Defendant and his passenger to put their hands on the vehicle (doc. 8, p. 2). Officer Liberto testified that he and the other officers approached the vehicle with caution.

---

[2] Subsection "B" provides:

> B. Except as provided by R.S. 32:361.1(C), no person may operate a motor vehicle with any object or material placed on or affixed to the front windshield or to front side windows of the vehicle so as to obstruct or reduce the driver's clear view through the front windshield or front side windows, nor place on or affix to the front windshield or the front side windows of a motor vehicle, any transparent material if the material alters the color or reduces the light transmission of the windshield or front side windows.

2

Officer Liberto further testified that as he approached the vehicle, a strong odor of marijuana emanated from the interior compartment of the Suburban.[3] Officer Liberto stated that he told Defendant to put his hands on the car and asked if anyone else was in the vehicle (Government Ex. 1). He further testified that, because the windows were tinted and he could not see inside, he positioned his head into the car to make sure no one else was in the vehicle. At that time, he observed a "marijuana cigarette" and two Styrofoam cups in plain view containing purple liquid that appeared to him to be codeine syrup.

Officer Collins testified that as he approached the vehicle he saw a cloud of smoke emanating from the car. Officer Collins testified that he also had smelled the odor of marijuana. He further testified that he conducted a *Terry*[4] pat-down for weapons of Defendant's clothing whereupon he felt a bulge that he believed to be consistent with street-level drug packaging. Officer Collins then removed the item from Defendant's pocket and determined that the package was a small bag of pills believed to be prescription narcotics. He further testified that he put the pills back in Defendant's pocket and informed him he was under arrest.

Officer Liberto testified that Officer Collins then handcuffed and moved Defendant to the front of the police cruiser whereupon, as seen in Government's Ex. 1, the entirety of the contents of his pockets were removed. Officer Liberto

---

[3] Officer Liberto testified that he has received training to detect marijuana.

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

3

further testified that while Officer Collins removed the contents of Defendant's pockets, Officer Liberto advised Defendant of his *Miranda* rights. Officer Liberto also stated that, at the time Defendant was handcuffed and his pockets were being searched, he was arrested.

During this search Officer Collins noticed the center console of the car "was dislodged and out of place" which prompted him to look more closely at the console.[5] Officer Collins then discovered several bags of marijuana "stuffed under" the console. As seen in Government Ex. 1, the Officers also located a Sprite soda bottle that appeared to contain codeine syrup. Officer Liberto testified that the liquid in the Sprite bottle had a "purple-ish" tint and that the smell was consistent with that of codeine.

Officer Collins testified that while searching the car he noticed that the carpet on the floorboard seemed to have been "tampered with" and, due to his training,[6] such changes to the floorboard carpet may reveal drugs located under the carpet. When Officer Collins lifted the carpet he located a firearm.

## Analysis

Defendant argues that: (1) Officer Collins had no reason to conduct an initial *Terry* pat-down because there was no reason to believe Defendant was dangerous; (2) Officer Collins' pat-down exceeded the scope of *Terry*; (3) Officer

---

[5] Officer's Collins testified that, due to his interdiction training and experience, he was prompted to look in the car console.

[6] Officer Collins testified that due to his interdiction training, he knew the area under the floorboard carpet is commonly used to hide narcotics or weapons.

4

Liberto did not have a reasonable basis to look into the vehicle at the point when he saw the marijuana cigarette; (4) once Officer Liberto found the marijuana cigarette, the search of the vehicle should have ended; and (5) Officer Collins exceeded the scope of his search by looking under the floorboard carpet of the vehicle.

The Government asserts that: (1) due to the information that officers received earlier that week, the officers had a reasonable basis for conducting a *Terry* pat-down on the Defendant; (2) Officer Liberto was lawfully looking into the vehicle to determine if anyone was present when he saw the marijuana cigarette in plain view; (3) officers had probable cause to believe there was contraband in the vehicle; (4) officers had probable cause to search Defendant's body because they smelled marijuana; and (5) the evidence Defendant seeks to suppress would have inevitably been found during the inventory search.

I. **Application of *Dickerson***

Defendant asserts that the scope of *Terry* was exceeded during Officer Collins' initial pat-down of Defendant. The U.S. Court of Appeals for the Fifth Circuit has held that "when an officer stops a vehicle for a valid traffic purpose, he may—without any suspicion—order the driver and any passengers to exit the vehicle. Then, after the occupants obey, the officer may pat down any [person], who by virtue of articulable facts produced by the officer's appropriate visual inspection, he reasonably suspects constitute a danger to officer safety." *United States v. Meredith*, 480 F.3d 366, 370 (5th Cir. 2007) *citing Maryland v. Wilson*,

5

519 U.S. 408, 414–15, 117 S.Ct. 882 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330 (1977).

"If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry*, and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 367, 113 S.Ct. 2130 (1993). In *Dickerson*, an officer determined that a lump in the defendant's jacket pocket "was contraband only after he squeezed, slid, and otherwise manipulated the pocket's contents." *Id*. The Court determined that "his continued exploration of the pocket after he concluded that it contained no weapon was unrelated to the sole justification for the search under *Terry*." *Id*. Thus, the Court found "because this further search was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional." *Id*.

At the hearing, Officer Collins testified that after he smelled the odor of marijuana emanating from Defendant's vehicle, he executed a *Terry* pat-down on Defendant and concluded that the bulge was not a weapon. Officer Collins further testified that he manipulated the bulge and could tell that the bulge was not a weapon but was likely drugs. His manipulation, "of the bulge," went beyond the scope of a *Terry* stop once Officer Collins was aware that it was not a weapon.

Once Officer Collins determined that the item was not contraband, a further search of Defendant's person must have been justified by a warrant or some other exception to the warrant requirement. At the hearing, Officer Collins was

6

unable to articulate any independent reasons for the search and subsequent seizure of the oxycodone. For instance, no testimony was provided: (1) suggesting Officer Collins smelled marijuana on Defendant's person[7] (thus creating a "plain smell" exception to the warrant requirement), (2) indicating that a reliable source may have informed Officer Collins that Defendant had contraband on his person, or (3) indicating that Defendant's independent action that may have led Officer Collins to believe drugs that were on his person.[8] Thus, in seizing the oxycodone from Defendant's person, under the circumstances presented here, officers conducted the type of search that "amounted to the sort of evidentiary search that *Terry* expressly refused to authorize."[9] Accordingly, the Court orders the suppression of the oxycodone.[10]

---

[7] In its opposition to Defendant's motion to suppress, the government asserts that the "defendant had about him a strong odor of marijuana" (doc 12-1, p. 4). However, the Court notes that at the hearing, neither officer testified that he smelled a marijuana odor on Defendant.

[8] In *United States v. Humphries* the Court found "additional factors must be present to localize the presence of marijuana such that its placement will justify either the search or the arrest. F.3d. 653, 658 (4th Cir. 2004). For example, in *Humphries*, officers: (1) exited the vehicle in a high crime, (2) observed the defendant pat his waist area, (3) from 20 feet away officers detected marijuana and continued to smell it as they approached the defendant, (4) and as the officers attempted to walk closer to the defendant, he turned and began to walk away. *Id.* at 659.

[9] *United States v. Dickerson*, 508 U.S. 366, 378, 113 S.Ct. 2130 (1993).

[10] The government argues the oxycodone would have been found during a search incident to Defendant's arrest. However, Officer Collins testified that Defendant was arrested for the possession of the oxycodone, found during the illegal search.

7

## II. The Search of the Vehicle

In his Supplemental Motion to Suppress, Defendant asserts that the officers' search of his vehicle, after he was handcuffed and in custody, is a violation of *Arizona v. Gant.* 556 U.S. 332, 129 S.Ct. 1710 (2009). In *Gant*, the Court held that if there is no possibility that an arrestee could reach into the area where law enforcement officers seek to search, then the justifications for a search incident to arrest (officer safety and preserving evidence) are absent. *Id.* at 339. In such an instance, the search incident to arrest exception to the warrant requirement does not apply. *Id.*

However, circumstances unique to the vehicle context may justify a search incident to arrest when it is reasonable to believe that evidence relevant to the crime justifying the arrest might be found in the vehicle. *Arizona v. Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710 (2009). In *United States v. Thomas*, the Fifth Circuit concluded that "marijuana emanating both from Gregg's person and the vehicle" gave the police officer "probable cause to believe that the vehicle contained contraband."[11] 12 F.3d 1350, 1367 (5th Cir. 1994) (on rehearing). "If probable cause justifies a search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir. 1992).

---

[11] The Court considered other factors; including the defendant's deception about his previous arrest and the fact that he was not the registered owner of the vehicle.

8

Because the traffic stop here was lawful, and Defendant does not contest it, probable cause was required to justify a search of Defendant's vehicle. As previously noted, the smell of marijuana alone provided sufficient probable cause to justify the search of the vehicle. Accordingly, the officers were justified in searching those areas of Defendant's vehicle where marijuana could have been located. The marijuana cigarette and codeine liquid that were found in plain view provided additional justification for searching the entire vehicle, as additional contraband may have been located elsewhere in the vehicle.

The Court further notes that because Officer Collins was trained to notice these types of characteristics in vehicles, he was justified in looking under the carpet on the floorboard of Defendant's vehicle. Officer Collins' discovery of the firearm therefore must be deemed permissible because the smell of marijuana gave him probable cause to search the entire vehicle including areas where marijuana may have been located. Such areas reasonably included the area under the floorboard carpet over which drugs could be concealed. Accordingly, Defendant's attempt to suppress the firearm and the marijuana is denied.

### III. Inevitable Discovery

At the hearing, the Government argued that the drugs and firearm found in the car would have been discovered during the inventory search of the vehicle. The Court will not address this theory, as the marijuana and firearm are deemed admissible on other grounds.

## Conclusion

Accordingly, the Court concludes that: (1) the prescription narcotics (oxycodone) seized by officer will be suppressed; (2) the marijuana seized by officers will be admitted; and (3) the firearm officers seized will be admitted.

For the foregoing reasons, the motion to suppress (docs. 8 and 13) filed by defendant is hereby **DENIED** in part, and **GRANTED** in part for the reasons set forth in this ruling.

Baton Rouge, Louisiana, August 8, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA